Paul T. Cullen, Esq. (#193575)
The Cullen Law Firm, APC
9800 Topanga Canyon Boulevard
Suite D, PMB 325
Chatsworth, CA 91311-4057
paul@cullenlegal.com
Tel: 818-360-2529
Fax: 866-794-5741

Attorneys for Plaintiff NICHOLAS CHARTON,
on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS CHARTON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FOUNDATION RISK PARTNERS CORP., a Delaware corporation doing business in California; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 25-CV-11738-JFW-RAO**<br><br>**Class Action: Rule 23 Plaintiff Class**<br><br>**FIRST AMENDED INDIVIDUAL, CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND PENALTIES**<br><br>(Rule 23 Plaintiff Class and FLSA Collective Class)<br><br>1. Violation of FEHA – Disability Discrimination (Gov. Code § 12940(a));<br>2. Violation of FEHA – Failure to Accommodate Disability (Gov. Code § 12940(m));<br>3. Violation of FEHA – Failure to Engage in Interactive Process (Gov. Code § 12940(n));<br>4. Violation of FEHA – Retaliation (Gov. Code § 12940(h));<br>5. Wrongful Termination in Violation of Public Policy;<br>6. Violation of Labor Code § 1102.5 – Whistleblower Retaliation;<br>7. Nonpayment of Wages (Lab. Code §§ 201, 202, 204, 218.5 et seq.);<br>8. Recovery of Unpaid Overtime Wages (Lab. Code §§ 510, 1194 et seq.);<br>9. Failure to Provide Meal Periods (Lab. Code § 226.7); |

10. Failure to Provide Rest Periods (Lab. Code § 226.7);
11. Failure to Furnish Accurate Itemized Wage Statements (Lab. Code § 226);
12. Waiting Time Penalties (Lab. Code § 203);
13. Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. §207;
14. Violation of Business & Professions Code § 17200 et seq. (Unfair Competition Law);
15. Declaratory Relief;
16. Injunctive Relief;
17. Violation of Bus. & Prof. Code, §16600;
18. Violation of the Cartwright Act – Bus. & Prof. Code § 16720 et seq.;
19. Intentional Interference with Prospective Economic Advantage; and,
20. Declaratory Relief
21. Accounting

**JURY TRIAL DEMANDED**

Plaintiff NICHOLAS CHARTON ("Plaintiff"), an individual, on behalf of himself, all other employees similarly situated, and the general public (hereinafter "Plaintiffs") hereby files this Individual, Class and Collective Action Complaint against Defendant FOUNDATION RISK PARTNERS CORP., a Delaware corporation and DOES 1 to 10, inclusive (hereinafter collectively referred to as "Defendants" or "FRP"). Each allegation in this First Amended Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. Plaintiffs are informed and believe, and on information and belief, allege as follows:

## I.

## INTRODUCTION

1. This is a hybrid individual, class, and collective action. Plaintiff's individual claims are for discrimination, retaliation against a whistleblower and wrongful termination for having complained about Defendants' failure and refusal to pay

wages that were due and owing, not just to himself, but to Plaintiff's coworkers as well.

2. Plaintiff's class and collective claims revolve around (a) nonpayment of minimum and/or overtime wages, along with relevant wage and hour penalties, and (b) the systematic utilization of patently unlawful contracts with dozens, if not hundreds of California-based FRP employees, which contracts purport to prohibit these employees from, among other things, competing against Defendants in any future employment and from soliciting former coworkers employed by Defendants to work for competitors of Defendants herein.

3. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## **II.**

## **JURISDICTION AND VENUE**

4. This Court has original jurisdiction over the federal claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b) which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and others employees similarly situated." Plaintiff has filed with this court a consent to join this action.

5. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, because the state law claims alleged herein all arise out of the same transaction and occurrence, i.e., the failure to properly pay all wages due—and there is no conflict between the procedures applicable to the FLSA and state law claims. *Busk v. Integrity Staffing Solutions, Inc.,* (9th Cir. 2013) 713 F.3d 525, 530, reversed on other grounds (2014) 574 U.S. 27 ("In sum, we agree with the other circuits to consider the issue that the fact that Rule 23 class actions

use an opt-out mechanism while FLSA collective actions use an Opt-in mechanism does not create a conflict warranting dismissal of the state law claims.")

6. Venue is proper in this Court, because one or more of the Defendants named herein maintains a principal place of business or otherwise is found in this judicial district and many of the acts complained of herein occurred in Los Angeles County, California, which is located within this district.

## III.

## PARTIES

7. Plaintiff resides in California and was employed by FRP from January 1, 2022, until he was wrongfully terminated on September 18, 2025.

8. Defendant FOUNDATION RISK PARTNERS CORP. ("FRP") is a Delaware corporation doing business in California, including operating the former Gaspar Insurance Services, LLC, in the Los Angeles area. FRP is an "employer" under FEHA and the Labor Code.

## ALL DEFENDANTS

9. Defendants, and each of them, are now, and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

10. All Defendants, and each of them, were and are the agents, servants, employees, joint venturers, and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

11. Defendants, and each of them, proximately caused Plaintiffs, all other similarly situated employees and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

12. Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such, were co-employers of the Plaintiffs and similarly situated employees.

13. Defendants, and each of them, at all times mentioned in this Complaint concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

14. Defendant FRP and DOES 1 through 10, at all relevant times, were employers, whose business operations were subject to the California Labor Code and the California Industrial Welfare Commission Wage Orders. These Defendants are jointly and severally liable for all the violations alleged herein, in that they dictated material terms and conditions of the Plaintiffs' and similarly situated employees' employment and controlled material aspects of the employment relationship.

## IV.

## GENERAL ALLEGATIONS

15. Plaintiff began working full-time for Gaspar Insurance Services, LLC (hereinafter "Gaspar") in August 2011 at the age of 21.

16. Gaspar was founded and owned by Plaintiff's older brother, Timothy Gaspar (the "Owner").

17. Plaintiff had previously worked part-time for Gaspar for several summers.

18. From August 2011 to December 2021, Plaintiff was a full-time employee and leading inside insurance sales representative at Gaspar, spending 90% or more of his time either in Gaspar's office or at his home office, engaged in inside sales.

19. At Gaspar, the vast majority of these inside sales representatives were called "Producers."

20. Plaintiff was a top Producer at Gaspar, having won the top Producer award 6 out of the 10 years he worked there.

21. During all times relevant to this Complaint, Plaintiff was paid strictly on commission with no salary and no guaranteed minimum wage. That was true both when he worked for Gaspar and when he subsequently worked for FRP.

22. Moreover, during all times relevant to this Complaint, Plaintiff was an employee (and not an independent contractor) – both of Gaspar and, after that, of FRP.

23. As an incentive for Producers like Plaintiff to excel at their work, while working for Gaspar, Gaspar gave Plaintiff and his fellow Producers contractual rights in the books of business they created.

24. These contractual rights were, in essence, a profit-sharing mechanism, whereby Gaspar provided Producers a share of commissions or book value, but did not grant Producers any equity in Gaspar (e.g., shares, partnership interest, or LLC membership).

25. As such, this contingent contractual right (or profit-sharing right) was not akin to an "ownership interest in the business entity" under Bus. & Prof. Code, § 16601.

26. **FRP's Acquisition of Gaspar:** 2021 was Gaspar's final year as an independent entity. In September 2021, Gaspar's Owner informed Plaintiff that the Owner planned to sell Gaspar to FRP.

27. FRP had agreed to pay in cash and to allow Gaspar's employees to continue operations with the same staff, same location, same daily operations, and even the

same name on the door (as a fictitious business name) – to maintain continuing post-sale and to avoid alarming customers.

28. On January 1, 2022, FRP acquired Gaspar.

29. Gaspar is one of 10 or more agencies in California that FRP has acquired over the past 4 years.

30. Plaintiff, like his fellow Producers, was an involuntary participant in the sale of Gaspar to FRP.

31. One of the conditions FRP demanded in the acquisition of Gaspar was that Gaspar have unencumbered ownership of all the books of business at Gaspar, portions of which were subject to profit-sharing rights by Gaspar's Producer employees.

32. To ensure that FRP was able to purchase all of Gaspar's books of business, unencumbered by any employee contractual rights, FRP, a Florida-based company, drafted Account Acquisition Agreements, pursuant to which Gaspar bought out its Producers' rights in the books of business the Producers had developed.

33. These Account Acquisition Agreements, which FRP required Gaspar and Plaintiff to execute, inaccurately stated that Plaintiff (like his Producer colleagues) was an independent contractor of Gaspar.

34. This contractual recital was incorrect as a matter of law, because Gaspar had retained the right to exert pervasive control over Plaintiff's employment, including, but not limited to retaining the right to terminate Plaintiff for non-compliance with any number of Gaspar's requirements, such as attending weekly and monthly meetings.

35. Plaintiff, like his Producer colleagues, was a full-time employee working for Gaspar.

36. At no time did Plaintiff have any ownership stake in Gaspar.

37. He was neither promised nor issued shares in Gaspar at any time.

38. As an extra sales incentive while Plaintiff worked for Gaspar, Gaspar granted Plaintiff contractual, profit-sharing rights in the book of business he developed.

39. In connection with FRP's acquisition of Gaspar and in derogation of California law, FRP demanded that the Account Acquisition Agreements, which divested Gaspar's producers of their profit-sharing rights in their books of business, include additional contractual obligations that purported to bind these employee Producers to a multitude of unlawful, restrictive covenants.

40. For example, the Account Acquisition Agreements all have restrictive covenants that prohibit Gaspar's employee Producers, for a period of FIVE full years after the closing of the sale of Gaspar, from competing with FRP in any way, shape, or form in every single one of the 50 states of the Union as well as Puerto Rico, the U.S. Virgin Islands, and Washington, D.C.

41. Notably, the Account Acquisition Agreements do not state that purchase made by Gaspar from Plaintiff is of the goodwill in the Plaintiff's or his colleagues' books of business.

42. There are only two references to goodwill in the Account Acquisition Agreement. They are as follows:

a. There is an agreement to use "best efforts to assist Agency in transitioning the Book of Business to Agency and preserving the goodwill and relationships with the Client Accounts."

b. And there is an agreement, as noted further, below, not to "damage or destroy the goodwill and esteem of [Gaspar] or the Book of Business with its carriers, employees, Client Accounts, potential Client Accounts, and any other Persons who may at any time have or have had business relations with Agency or the Book of Business."

43. That is all.

44. As such, it follows that, for purposes of Bus. & Prof. Code, § 16600 and 16601, Plaintiff was not selling goodwill to Gaspar. Instead, he was releasing his contractual profit-sharing rights.

45. The pertinent restrictive covenant language was/is as follows:

> Seller [i.e., Plaintiff and/or any member of the Restrictive Covenant Class] hereby agrees that Seller will not, and will not permit any of Seller's affiliates to, except on behalf of Agency [i.e., Gaspar] or FRP or their respective affiliates, during the period beginning on the Closing Date [i.e., December 31, 2021] and ending on the date that is the three (3) year anniversary of the Closing Date (the "Non-Compete Restricted Period") for subparagraph (i) below and five (5) year anniversary of the Closing Date (the "Restricted Period") for the remainder of this Agreement, directly or indirectly, for any reason, for its own account, or on behalf of, or together with or through, any other Person [i.e., any individual, entity, association or enterprise], whether as principal, agent, shareholder, creditor, participant, partner, promoter, director, officer, manager, member, equity owner, employee, consultant, sales representative, insurance agent or broker or otherwise:
>
> i) own, control, manage, or participate in the ownership, control or management of, or render services or advice to, or have a material financial interest in, or lend its name to, any business or Person (or any affiliate of a Person that is) engaged in, or that is undertaking to become engaged in, in whole or in part the Insurance Business[1]

[1] The Account Acquisition Agreement defined "Insurance Business" as follows "Insurance Business" means and includes all lines of property and casualty insurance, all forms of bonds, all employee benefits business and all lines of life

within the geographic areas set forth on Exhibit C attached hereto (the "Restricted Area")[2];

ii) solicit, divert, accept business from, or service, directly or indirectly, for Seller's [i.e., Plaintiff's (and/or any similarly situated Producer's/Salesperson's)] account or the account of any other Person (other than Gaspar, FRP, or their respective affiliates), during the Restricted Period, any Client Account[3] with respect to Insurance Business;

iii) hire or participate in the hiring of or directly or indirectly solicit or participate in the solicitation of any current or former employees of Agency [i.e., Gaspar] or its affiliates to work for Seller, for any competitor of [Gaspar], or for any other third party; or

iv) damage or destroy the goodwill and esteem of Agency or the Book of Business with its carriers, employees, Client Accounts, potential

---

insurance, disability income insurance, accident and health insurance, long term care insurance annuities and all other life related lines of insurance all whether sold on an individual or a group basis. Insurance Business includes services related to the Insurance Business."

[2] Exhibit C lists every single one of the 50 states in the United States as well as Puerto Rico, the US Virgin Islands, and Washington D.C. being the geographic area in which Plaintiff and similarly situated Restrictive Covenant Class members were prohibited from engaging in competition with FRP.

[3] The Account Acquisition Agreement defined "Client Account" as follow: "'Client Account' means (A) any policyholder or bondholder produced and serviced by Seller [i.e., Plaintiff and/or any similarly situated Producer/Salesperson] to whom commission and/or fee based insurance products or services have been provided, and (B) any individual, entity, association or enterprise ("Person") to whom fee-based services have been provided by Seller."

Client Accounts, and any other Persons who may at any time have or have had business relations with Agency or the Book of Business.

46. Bus. & Prof. Code, § 16601 allows for restrictive covenants only when a person sells the goodwill of a business or an "owner of a business entity" disposes of "all of his or her ownership interest" (e.g., shares, partnership interest, or LLC membership).

47. However, Bus. & Prof. Code, § 16601 defines "ownership interest" narrowly as equity in the entity (e.g., stock, partnership stake), not mere contractual rights or incentives, such as those at issue here.

48. Plaintiff was one of dozens of employees at Gaspar, who had similar contractual rights in their books of business, none of which books individually constituted a true ownership interest in Gaspar or Gaspar's goodwill.

49. The sale of Gaspar to FRP followed FRP's dictates.

50. It was effectuated in a two-step process, whereby Plaintiff and other Producers were obligated by Gaspar to sell their contractual profit-sharing interest in their respective books of business to Gaspar (or buy out Gaspar's rights and find another job), and Gaspar would, in turn, sell the aggregated books of business to FRP.

51. Thereafter, Plaintiff and all, or substantially all the Gaspar Producers were hired by FRP.

52. The sale was the Owner's election, and Gaspar's employees were along for the ride as involuntary participants.

53. Plaintiff is one of dozens, if not hundreds of California employees from whom FRP has extracted such unlawful restrictive covenants in a variety of contracts, including the Account Acquisition Agreements and employment contracts at multiple California-based insurance agencies FRP has acquired over the past 4 years.

54. Similarly, in derogation of California law, FRP required Plaintiff and fellow Producers to execute employment agreements which agreements contained the following restrictive covenants:

A. "NON-SOLICITATION OF EMPLOYEES. For two (2) years immediately following the termination of his or her employment, Employee will not, for any reason, on the Employee's own behalf or on behalf of or in connection with any other Person (i) solicit any employee of the Company to quit his or her employment with the Company or (ii) engage as a service provider any employee of the Company."

B. "Further, at any time when Employee is actively engaging in the Company's business, Employee shall not engage in any other business, whether or not the business is in competition with the Company."

55. FRP has required dozens if not hundreds of similarly situated employees of insurance agencies it has acquired to execute employment agreements with identical or nearly identical restrictive covenants, all of which are void *ab initio* and unenforceable pursuant to Bus. & Prof. Code § 16600(a) and 16600.1 (as amended by SB 699 & AB 1076), which code sections mandate that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

56. **Post Acquisition:** After FRP's acquisition of Gaspar was completed, FRP hired all, or virtually all of Gaspar's employees, including Gaspar's Owner and Plaintiff.

57. Thereafter, all payroll was issued to these former Gaspar employees by FRP.

58. As noted above, Plaintiff worked as an inside salesman.

59. Under the new regime, FRP paid Plaintiff only once per month.

60. Notwithstanding Plaintiff's success as a salesman, there were still bad months among the good months – months when Plaintiff's income dipped below 1.5 times the minimum wage rate in California.

61. FRP's pay structure did not ensure that Plaintiff would earn at least 1.5 times the state minimum wage for the hours he worked, which is a prerequisite for classifying an employee as exempt from unpaid overtime and meal and rest breaks.

62. For example, one month in the beginning of February 2023, in or about February, notwithstanding the fact that Plaintiff had worked full-time all month-long, FRP paid Plaintiff zero dollars.

63. Plaintiff was therefore a non-exempt employee under California law, and subject to the Industrial Welfare Commission Wage Order 4.

64. However, it is not merely that Plaintiff and the California Sales Representative Class were not always earning 1.5 times California's minimum wage for all payroll periods, Defendant FRP's business is not entitled to invoke an inside sales exemption for the nonpayment of overtime, because it is not a "retail" establishment.

65. This is also true under federal law, and, in addition thereto, federal law specifically requires that inside salespersons, like Plaintiff, be provided with a bona fide salary or guarantee that exceeds the Federal minimum wage for each pay period.

66. Plaintiff and similarly situated inside sales representatives employed throughout the United States and its territories have regularly worked more than 8 hours per day and/or 40 hours per week without overtime pay, meal breaks, or rest breaks.

67. Plaintiff and similarly situated inside sales representatives employed in California by FRP have not been provided meal and rest breaks in conformity with California law, even though they were entitled to the same.

68. FRP did not compensate Plaintiff, and has not compensated similarly situated sales representatives separately for rest breaks. This too violates California law. *See Vaquero v. Stoneledge Furniture LLC* (2017) 9 Cal.App.5th 98, *as modified (Mar. 20, 2017)*.

69. FRP has never paid Plaintiff or similarly situated inside sales representatives employed in California by FRP any premium wages for missed meal or rest breaks.

**70. FRP's Bad-Faith Refusal to Pay the "Earn-Out" Wages to Employees:** As part of the acquisition, FRP promised that if, within 3 years, the former Gaspar employees who were now employed by FRP (the "FRP/Gaspar" employees) increased their profitability by 7 times the level it was at the time of purchase, FRP would pay Gaspar an additional $7.2 million as a bonus.

71. This $7.2 million bonus was denominated in the APA as the "Earn-Out."

72. To incentivize Gaspar's sales force to meet this seemingly impossible goal, on behalf of FRP, and with FRP's acquiescence, the Owner promised that substantial commissions (i.e. approximately $3.6 million) would be paid to all the FRP/Gaspar employees if they achieved the goal.

73. The Owner, now that he was an employee of FRP and had the title of regional president, was authorized by FRP to establish and/or change FRP company policies with respect to FRP/Gaspar employees, who were his subordinates.

74. Under the Owner's leadership and with the promised commissions, by the end of the 3-year period, i.e., by December 31, 2024, the FRP/Gaspar team achieved the 7x sales increase, which satisfied the key condition precedent for the Earn-Out payment FRP now owed. All other conditions precedent had been met.

75. However, in or about February 2025, FRP baselessly began to claim that the condition precedent for the Earn-Out had not been met, and FRP refused to pay the full amount due.

76. In response, the Owner complained to FRP on behalf of himself and on behalf of the former Gaspar team (i.e., the FRP/Gaspar employees) about FRP's reneging on the promised Earn-Out payment.

77. In March 2025, during a conference call that included Plaintiff, the former Gaspar producers, and multiple FRP executives, FRP executives Jeff Leonard and Ben Barbier told the Gaspar employees that they were "idiots" for having trusted

FRP's accounting and the sales reports, i.e., the "flux reports," that specifically confirmed that the Gaspar group had achieved the 7x sales goal and not just by a little.

78. In fact, the Gaspar team achieved the 7x goal in early December of 2024, and they did not stop. They kept going after that, obtaining substantial additional sales revenues by the end of the month.

79. **Plaintiff's Whistleblowing Activities:** On April 1, 2025, Plaintiff called FRP's Chief Sales Officer, Alan Florez, who was in Florida, to complain about the nonpayment of the Earn-Out.

80. The Earn-Out constituted wages that FRP was contractually obligated to pay FRP/Gaspar employees upon satisfaction of the conditions precedent – all of which had been satisfied.

81. Mr. Florez seemed concerned about Plaintiff's comments.

82. Mr. Florez flew to California a week later along with another high-ranking FRP executive, i.e., Liza Moran, FRP's San Francisco-based Regional Sales Manager for the Northwest United States.

83. They both met with each FRP/Gaspar employee and seemed to hear them out with respect to their complaints about the nonpayment of commissions promised to them in connection with the Earn-Out.

84. April 1, 2025, was intended to be the Owner's last day as CEO of the former Gaspar employee group, and a party was planned for his transition to a Producer role.

85. Multiple FRP executives attended the party, but, because the Earn-Out issue had not been resolved, tensions were high.

86. After significant pushback from the Owner and FRP/Gaspar employees (including Plaintiff), complaining about FRP's refusal to fully honor its contractual obligation, in or about July 2025, FRP eventually paid about 70% of the Earn-Out to the FRP/Gaspar Producers, including Plaintiff.

87. However, FRP refused to pay the remaining roughly 30% in cash, and, instead, FRP attempted to compensate the FRP/Gaspar employees with non-negotiable stock and/or a conditional loan in violation of Lab. Code § 212.

88. Further complaints were lodged by Plaintiff and his brother, the Owner.

89. In response, FRP paid these wages to the approximately 30 Gaspar/FRP support staff.

90. On the other hand, FRP told the Gaspar/FRP Producers that they must accept stock or they would get nothing at all for the remaining 30% due and owing.

91. On April 23, 2025, Plaintiff again complained to Liza Moran, about FRP's continued refusal to pay the full 30% in cash.

92. Moran then attempted to coerce Plaintiff into accepting stock on a 3-year loan, forgiven only if Plaintiff grew his book 10% annually— a virtually unattainable feat — promising him that the stock would "double."

93. Plaintiff objected, refusing to accept FRP's illegal attempt to substitute stock for wages.

94. Around July 7, 2025, a $14,684.15 bonus check from Vault Insurance Company arrived, payable to "Gaspar," for a growth contest.

95. Plaintiff was the only seller of Vault products; the bonus was tied to accounts, the majority of which were Plaintiff's clients.

96. Moran and the office manager contacted Vault representative Renee Harris, who confirmed the check was intended as a payment to workers (like a tip) and particularly to Plaintiff himself.

97. Nevertheless, FRP kept the entire check and paid nothing to Plaintiff.

98. With all these disputes ongoing, on or about August 4, 2025, FRP sued the Owner for declaratory relief in state court of Florida, and on or about August 18, 2025, the Owner countersued FRP for breach of contract, breach of the implied covenant of good faith and fair dealing and promissory estoppel, demanding full

payment of the Earn-Out. That litigation is presently playing out in federal court in Florida.

99. **Plaintiff's FEHA Claims:** For over a decade, Plaintiff has suffered from multiple stress-related health issues, including Crohn's disease and acid reflux, of which FRP was very much aware.

100. These conditions require Plaintiff to be near a restroom and to be large enough to accommodate a small couch, so Plaintiff could occasionally rest.

101. At the time of the April 1, 2025 party for the Owner referenced herein above, Plaintiff had a spacious office with a resting couch for his health needs.

102. However, FRP's new office manager, Heidi Fils, pressured Plaintiff to vacate his office and give it to her.

103. The new office was cramped and had no space for nor did it have a resting couch, forcing Plaintiff to work more from home amid changing corporate culture.

104. Over Labor Day weekend, i.e. August 29, 2025, at around 1:30 p.m., while working from home, Plaintiff suffered a cardiac event.

105. Plaintiff sought immediate medical treatment.

106. Plaintiff returned to work, but, shortly thereafter, on September 16, 2025, Plaintiff notified Heidi Fils that he would be out for a medical procedure.

107. **Plaintiff's Termination:** On September 18, 2025, at 8:30 a.m., during a scheduled Teams call with sales leader Tim Casey regarding 2026 goals, without any warning or prior discipline, Casey abruptly terminated Plaintiff.

108. Present during the termination were HR representative Karen Ratcliff and Liza Moran.

109. Casey described the reason for Plaintiff's termination as "an unhealthy work environment," elaborating that it stemmed from Plaintiff's multiple complaints to Moran and others about FRP's nonpayment of wages from the Earn-Out.

110. Plaintiff told them that multiple employees had also complained and again asked why he was being terminated, but Casey refused further explanation.

111. When Plaintiff asked about his reputation and his book of business, Casey replied with words to the effect that, "Your reputation is your problem and these clients are ours now."

112. Plaintiff informed them, at that very moment, he was in a parking lot, post-surgery picking up prescription medication.

113. Casey feigned ignorance of the medical procedure that Plaintiff had previously informed Casey he would be undergoing.

114. FRP immediately locked Plaintiff out of FRP's email and systems.

115. As an added act of retaliation and in a clear effort to intimidate any other worker from complaining about wages, approximately four hours later and on that same day, FRP terminated Plaintiff's older brother, the Owner.

116. FRP's actions have caused Plaintiff severe emotional distress, exacerbated health issues, lost wages, benefits, and future earnings.

117. Plaintiff has exhausted administrative remedies under FEHA and obtained a right-to-sue notice for all causes of action arising under the FEHA.

## V.

## CLASS AND COLLECTIVE CLASS ALLEGATIONS

118. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

119. Plaintiff brings this action on behalf of himself and all other similarly situated employees employed in California as collective action under the FLSA and a class action under California law and Fed. Rules Civ. Proc. (F.R.C.P.), Rule 23.

120. Pursuant to Rule 23 and common law related thereto, a case should be treated as a class action when a court finds: (a) that the predominant issues raised in the case are of a common interest; (b) that the parties are so numerous that it is impracticable to bring them all before this Court; (c) that the proposed Class is clearly and easily ascertainable; (d) that the named representatives' claims are common and typical of the claims of the proposed classes; (e) that the Class

representatives will adequately represent the interests of the classes; and (f) that a class action is superior to other methods of adjudicating the claims alleged herein. Each of the foregoing can and will be demonstrated at the hearing on Plaintiffs' motion for class certification.

121. With regard to conditional certification under the FLSA, Plaintiff is similarly situated to those he seeks to represent for the following reasons, among others:

a. Defendants employed Plaintiff as an inside sales person without any bona fide salary or guarantee that he would receive pay that exceeds minimum wage for each pay period.

b. Common questions exist as to whether Defendants failed to pay Plaintiff and FLSA Collective Class Members proper premium overtime pay.

c. Defendants are believed to have employed in excess of 100 FLSA Collective Class Members within the applicable statute of limitations.

d. Plaintiff has executed and filed a consent to sue form (ECF No. 4).

122. Consent to sue forms are not required for state law claims under Fed. Rules Civ. Proc. ("FRCP"), Rule 23.

123. Plaintiff brings this suit as a class action pursuant to Rule 23 on behalf of the following Classes of individuals:

a. ***The Restrictive Covenant Class:*** All current and former employees of Defendant FRP who worked in the State of California and who entered into any written agreement with Defendant FRP (including without limitation Account Acquisition Agreements, employment agreements or other contracts), which contracts contain(ed) one or more restrictive covenants, such as non-competition, non-solicitation of customers, and/or non-solicitation of employees provisions.

b. ***The California Sales Representative Class:*** All insurance and/or financial services sales representatives employed by FRP in the State

of California during the Class Period, i.e., the four (4) years preceding the filing of this Complaint up to and including the date the Court certifies this matter as a class action.

c. ***The Former California Sales Representative Subclass:*** all California Sales Representative Class Members who are former employees of FRP and whose employment was terminated 3 years prior to the filing of the Complaint herein.

124. Plaintiff also brings this case as a collective action for the following ***FLSA Collective Class:*** all insurance and/or financial services sales representatives employed by FRP in California during the three (3) years prior to the filing of the Complaint herein.

125. Class and Collective Class treatment are appropriate as set forth below.

126. **Numerosity**: The potential membership in each Class (or Subclass) is so numerous that joinder of all members is impractical. While the exact number of Class members is presently unknown to Plaintiffs, Plaintiffs estimate that membership in each Class exceeds 100. The exact number and specific identities of the members of the Classes may be readily ascertained through inspection of Defendants' business records.

127. **Commonality**: numerous questions of law and/or fact are common to all members of the Classes, including, without limitation:

a. Whether FRP was and is a retail institution for purposes of exemption from overtime and meal and rest break laws,

b. Whether FRP paid any of its inside sales representatives a bona fide salary or guarantee that met or exceeded minimum wage for each pay period,

c. Whether FRP provided the California Sales Representative Class with meal and rest breaks, in conformity with California law,

d. Whether FRP provided the California Sales Representative Class with code compliant wage statements,

e. Whether FRP paid the Former California Sales Representative Subclass all wages due and owing at the time of the termination of their employment with FRP,

f. Whether FRP obligated the California Sales Representative Class members to execute employment contracts with FRP, which contracts contain(ed) restrictive covenants, and whether said restrictive covenants were, in fact, unlawful noncompetition and non-solicitation agreements that violate Bus. & Prof. Code, §16600,

g. Whether FRP's uniform policy of requiring California Sales Representative Class, who are non-owner employees, to execute employment contracts containing said restrictive covenants constitutes a contract, combination, or conspiracy in restraint of trade in violation of the Cartwright Act (Bus. & Prof. Code, §16720).

h. Whether FRP's systematic imposition and attempted enforcement of these void restrictive covenants against the California Sales Representative Class constitutes an unlawful, unfair, or fraudulent business act or practice under Bus. & Prof. Code, 17200 et seq.

i. Whether FRP knew or should have known that such restrictive covenants were void under California law, thereby supporting punitive damages under Civ. Code, §3294.

j. Whether FRP's conduct has caused or is causing California Sales Representative Class members irreparable injury for which there is no adequate remedy at law, entitling the class to injunctive and declaratory relief.

128. **Typicality**: Plaintiff's claims are typical of the claims of all members of the Classes he seeks to represent. Defendants treated Plaintiff and all members of the Classes in a virtually identical manner with respect to the violations of law asserted herein. These violations of law arise out of Defendants' common course of conduct

in imposing employment contracts containing restrictive covenants as set forth hereinabove.

129. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the members of the Classes he seeks to represent.

130. **Superiority**: This action is properly brought as a class action, not only because the prerequisites of Rule 23 and common law related thereto are satisfied, but also because of the following:

a. The prosecution of separate actions by or against individual members of the Class would create risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;
b. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
c. Defendants have acted or refused to act on grounds generally applicable to all members of the Class, making declaratory relief appropriate with respect to all members of the Class;
d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members; and,
e. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

///

///

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of FEHA – Disability Discrimination (Gov. Code § 12940(a))

### (By Plaintiff individually against Defendant FRP)

131. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

132. Plaintiff has disabilities within the meaning of FEHA, including Crohn's disease, acid reflux, and related stress conditions, which limit major life activities such as working and digestive functions.

133. FRP had knowledge of these disabilities.

134. Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation.

135. FRP discriminated against Plaintiff on the basis of his disability by, among other things, demoting him by taking his accommodating office, failing to provide reasonable accommodations, and terminating him shortly after medical leave notifications and a cardiac event, using pretextual reasons tied to protected complaints.

136. As a direct and proximate result, Plaintiff has suffered damages, including lost wages, benefits, emotional distress, and medical expenses, in an amount to be proven at trial.

137. Defendant's conduct exhibited oppression, fraud, and/or malice, entitling Plaintiff to punitive damages pursuant to Civ. Code, §3294.

///

///

///

///

**SECOND CAUSE OF ACTION**

**Violation of FEHA – Failure to Accommodate Disability**

**(Gov. Code § 12940(m))**

**(By Plaintiff individually against Defendant FRP)**

138. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

139. FRP knew of Plaintiff's disabilities and failed to provide reasonable accommodations, such as maintaining access to a suitable office with resting facilities and proximity to restrooms, or engaging in the interactive process.

140. Instead, FRP demoted Plaintiff's workspace and terminated him amid medical needs.

141. As a direct and proximate result, Plaintiff has suffered damages as alleged above.

142. Defendant's conduct exhibited oppression, fraud, and/or malice, entitling Plaintiff to punitive damages pursuant to Civ. Code, §3294.

**THIRD CAUSE OF ACTION**

**Violation of FEHA – Failure to Engage in Interactive Process**

**(Gov. Code § 12940(n))**

**(By Plaintiff individually against Defendant FRP)**

143. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

144. FRP knew of Plaintiff's disabilities and failed to engage in an interactive process to accommodate his medical needs.

145. As a direct and proximate result, Plaintiff has suffered damages as alleged above.

146. Defendant's conduct exhibited oppression, fraud, and/or malice, entitling Plaintiff to punitive damages pursuant to Civ. Code, §3294.

## FOURTH CAUSE OF ACTION

**Violation of FEHA – Retaliation (Gov. Code § 12940(h))**

**(By Plaintiff individually against Defendant FRP)**

147. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

148. Plaintiff engaged in protected activities under FEHA, including requesting accommodations for his disabilities and complaining about discrimination and failure to accommodate.

149. FRP harassed Plaintiff and retaliated against him by demoting Plaintiff, withholding wages/bonuses, and terminating him under pretext.

150. As a direct and proximate result, Plaintiff has suffered damages as alleged above.

151. Defendant's conduct exhibited oppression, fraud, and/or malice, entitling Plaintiff to punitive damages pursuant to Civ. Code, §3294.

## FIFTH CAUSE OF ACTION

**Wrongful Termination in Violation of Public Policy**

**(By Plaintiff individually against Defendant FRP)**

152. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

153. FRP terminated Plaintiff in violation of fundamental public policies, including those against disability discrimination (FEHA), retaliation for wage complaints (Lab. Code § 1102.5), and nonpayment of wages (Lab. Code §§ 200 et seq.).

154. The stated reason ("unhealthy work environment") was pretext for retaliation over Earn-Out wage and bonus complaints, and amid Plaintiff's medical issues.

155. As a direct and proximate result, Plaintiff has suffered damages as alleged above.

156. Defendant's conduct exhibited oppression, fraud, and/or malice, entitling Plaintiff to punitive damages pursuant to Civ. Code, §3294.

**SIXTH CAUSE OF ACTION**

**Violation of Labor Code § 1102.5 – Whistleblower Retaliation**

**(By Plaintiff individually against Defendant FRP)**

157. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

158. Plaintiff reasonably believed FRP violated California law by failing to pay the Earn-Out and Vault bonus—wages and commissions earned—and by attempting to substitute illegal stock for cash (Lab. Code § 212).

159. Plaintiff disclosed these violations to FRP management (Florez, Moran) and supported the Owner's complaints.

160. FRP retaliated by terminating Plaintiff and his brother.

161. As a direct and proximate result, Plaintiff has suffered damages as alleged above, plus civil penalties.

162. Defendant's conduct exhibited oppression, fraud, and/or malice, entitling Plaintiff to punitive damages pursuant to Civ. Code, §3294.

///

///

## SEVENTH CAUSE OF ACTION

**Nonpayment of Wages (Lab. Code §§ 201, 202, 204, 218.5 et seq.)**

**(By Plaintiff individually against Defendant FRP)**

163. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

164. The balance due and owing on the Earn-Out (roughly 30% balance) and Vault bonus ($14,684.15) constitute wages, commissions, or bonuses earned by Plaintiff.

165. FRP has failed and refused to pay the full amount of these wages that are due and owing to Plaintiff.

166. FRP's attempt to substitute stock or conditional loan for the 30% violated Labor Code § 212, and it constitutes an unfair business practice to do the same.

167. Plaintiff is entitled to all unpaid wages, interest, waiting time penalties (Lab. Code § 203), and attorney fees (Lab. Code § 218.5).

## EIGHTH CAUSE OF ACTION

**Recovery of Unpaid Overtime Wages (Lab. Code §§ 510, 1194 et seq.)**

**(By Plaintiff and the California Sales Representative Class against Defendant FRP)**

168. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

169. FRP failed to pay Plaintiff premium overtime wages to which he was entitled for all work that he performed when he worked in excess of 8 hours per day and/or 40 hours per week, which he did regularly during the time he was employed in the statutory lookback time period of four years preceding the filing of the Complaint herein.

170. FRP never tracked hours, never paid premium overtime, and misclassified Plaintiff as exempt.

171. Accordingly, Plaintiff seeks to recover pursuant to Lab. Code, §1194 the unpaid balance of the overtime wages owed to him and the California Sales Representative Class.

172. Plaintiff also seeks all legal remedies available for FRP's willful non-payment of overtime wages, including but not limited to:

a. Interest pursuant to Lab. Code, §§218.6 and 1194(a), Civil Code §§ 3287 and §3289;
b. Reasonable attorneys' fees and costs of suit pursuant to Lab. Code, §1194; and/or
c. Damages and/or penalties pursuant to Lab. Code, §558(a).

**NINTH CAUSE OF ACTION**

**Failure to Provide Meal Periods (Lab. Code § 226.7)**

**(By Plaintiff and the California Sales Representative Class against Defendant FRP)**

173. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

174. Plaintiff and the California Sales Representative Class regularly worked over five (5) hours per shift; thus, they were entitled to a meal period of not less than 30 minutes without duty.

175. Plaintiff and the California Sales Representative Class also routinely worked in excess of ten (10) hours per shift; thus, they were entitled to a second meal period of not less than 30 minutes without duty.

176. Nevertheless, FRP failed to timely provide Plaintiff and the California Sales Representative Class with code-compliant meal periods, notwithstanding the fact

that they had not waived their right to the same. This is to say that FRP failed to provide meal periods in conformity with the requirements established by Lab. Code, §§ 226.7, §512, 516 and Section 11 of the IWC Wage Order(s).

177. Plaintiff and the California Sales Representative Class seek damages (in terms of premium pay) pursuant to Section 11(D) of the IWC Wage Order(s) and Lab. Code, §226.7(c), in the amount of one (1) additional hour of pay at the regular rate of compensation for each time that a meal period was not provided in conformity with the applicable wage order, the cumulative sum of which is to be proved at time of trial.

178. Plaintiff further seeks penalties pursuant to Lab. Code, §558(a) for FRP's failure to provide such meal periods.

179. Plaintiff seeks pre-judgment interest on all amounts recovered herein pursuant to Lab. Code, §§ 218.6, 1194(a) and Civ. Code, §§ 3287(b) and 3289.

**TENTH CAUSE OF ACTION**

**Failure to Provide Rest Periods (Lab. Code § 226.7)**

**(By Plaintiff and the California Sales Representative Class against Defendant FRP)**

180. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

181. Plaintiff and the California Sales Representative Class regularly worked at least four (4) hours (or a major fraction thereof) per shift; thus, they were entitled to at least one 10-minute paid rest period without duty for each such four-hour period.

182. Nevertheless, FRP failed to timely provide and the California Sales Representative Class with such rest periods and to separately compensate them for the same, notwithstanding the fact that they had not waived their right to the same. This is to say that FRP failed to provide rest periods consistent with the

requirements established by Lab. Code, §§ 226.7, §512, 516 and Section 12 of the IWC Wage Order(s).

183. Plaintiff and the California Sales Representative Class seek damages (in terms of premium pay) pursuant to Section 12(B) of the IWC Wage Order(s) and Lab. Code, §226.7(c), in the amount of one (1) additional hour of pay at the regular rate of compensation for each time a rest period was not provided, the cumulative sum of which is to be proved at time of trial.

184. Plaintiff and the California Sales Representative Class further seek penalties pursuant to Lab. Code, §558(a) for FRP's failure to provide such rest periods.

185. Plaintiff and the California Sales Representative Class seek pre-judgment interest on all amounts recovered herein pursuant to Lab. Code, §§ 218.6, 1194(a) and Civ. Code §§ 3287(b) and 3289.

## ELEVENTH CAUSE OF ACTION

### Failure to Furnish Accurate Itemized Wage Statements (Lab. Code § 226)

### (By Plaintiff and the California Sales Representative Class against Defendant FRP)

186. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

187. As noted above, FRP failed to pay Plaintiff and the California Sales Representative Class all premium wages due to them.

188. FRP thus violated Lab. Code, §226(a), in that it failed to furnish Plaintiff and the California Sales Representative Class with accurate itemized statements in writing showing (1) gross wages actually earned, (2) total hours worked, (3) net wages actually earned, and/or (4) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by him.

189. Plaintiff is informed and believes and thereon alleges that FRP did not maintain accurate business records pertaining to the total hours worked by Plaintiff and the California Sales Representative Class for FRP.

190. Plaintiff and the California Sales Representative Class have suffered cognizable legal injuries as a result of the aforesaid violations, including (a) the risk that he will not be paid for all hours he actually worked, (b) confusion over whether he received all wages owed him, (c) difficulty and expense involved in reconstructing pay records to compute all pay actually due and owing, and/or (d) the need to make mathematical computations to analyze whether the wages paid in fact compensated Plaintiff for all hours worked.

191. Plaintiff and the California Sales Representative Class herein seek damages and/or penalties pursuant to Lab. Code, §226(e) for each violation by FRP of Lab. Code, §226(a).

192. Plaintiff and the California Sales Representative Class further seek preliminary and permanent injunctive relief pursuant to Lab. Code, §226(g).

193. Plaintiff and the California Sales Representative Class seek an award of reasonable attorneys' fees and costs pursuant to Lab. Code, §226(e) and/or (h).

**TWELFTH CAUSE OF ACTION**

**Waiting Time Penalties (Lab. Code § 203)**

**(By Plaintiff and the Former California Sales Representative Subclass against Defendant FRP)**

194. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

195. FRP, in violation of Lab. Code, §203, willfully failed to timely pay Plaintiff and the California Sales Representative Class all wages due and owing, including

premium wages, not just at the time they became due, but also at the termination of their employment with FRP herein.

196. Plaintiff and the California Sales Representative Class seek penalties to which they are entitled pursuant to Lab. Code, §203, in the amount of their daily wage multiplied by thirty (30) days, the exact amount of which is to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

**Failure to Pay Minimum Wages and Overtime**

**in Violation of the FLSA, 29 U.S.C., §207**

**(By Plaintiff And the FLSA Collective Class against Defendant FRP)**

197. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

198. At all relevant times, Defendant was an "employer" and Plaintiff and the FLSA Collective Class were "employees" within the meaning of the FLSA, 29 U.S.C. § 203.

199. Defendant FRP is not a retail institution entitled to an exemption from minimum wages and/or overtime.

200. Defendant maintained a uniform policy and practice of classifying its sales representative employees as exempt from minimum wages and overtime.

201. Plaintiff and the FLSA Collective Class frequently (a) earned less than 50% of their compensation from commissions and/or (b) earned less than 1.5 times the minimum wage for all hours worked.

202. As a direct result of the willfulness classification of these employees, Defendant failed to pay Plaintiff and FLSA Collective Class the federal minimum wage in violation of 29 U.S.C. §206 and overtime premium wages in violation of 29 U.S.C. §207.

203. Plaintiff brings this claim as a collective action pursuant to 29 U.S.C. §216 on behalf of himself and all similarly situated current and former insurance sales representatives employed by Defendant FRP during the past 3 years preceding the filing of the Complaint herein.

204. Plaintiff and the FLSA Collective Class seek unpaid minimum wages, unpaid overtime wages, and liquidated damages, reasonable attorney's fees, and costs, all pursuant to 29 U.S.C. § 216(b).

**FOURTEENTH CAUSE OF ACTION**

**Declaratory Relief**

**(By Plaintiff individually against Defendant FRP)**

205. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

206. An actual controversy exists between the parties herein relating to their legal rights and duties.

207. That controversy is ripe for judicial determination, i.e., it is a present, concrete dispute.

208. As noted hereinabove, in connection with the acquisition of Gaspar, FRP required Plaintiff to execute contractual agreements containing restrictive covenants and a nonsolicitation agreement.

209. Plaintiff seeks declaratory relief declaring the restrictive covenants and nonsolicitation agreement FRP required Plaintiff to execute to be null and void.

///

///

///

///

## FIFTEENTH CAUSE OF ACTION

**Injunctive Relief**

**(By Plaintiff individually against Defendant FRP)**

210. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

211. Defendant FRP's maintenance of patently unlawful restrictive covenants and a nonsolicitation agreement with respect to Plaintiff presently interferes with Plaintiff's right to earn a living.

212. It both violates Plaintiff's rights and will cause Plaintiff irreparable harm for which there is no adequate remedy at law.

213. A contract that is void under Bus. & Prof. Code, § 16600 et seq. is unenforceable regardless of where and when the contract was signed. ( Bus. & Prof. Code, § 16600.5(a).)

214. An employer or former employer must not attempt to enforce a contract that is void under Bus. & Prof. Code, § 16600 et seq. regardless of whether the contract was signed and the employment was maintained outside of California. ( Bus. & Prof. Code, § 16600.5(b).)

215. An employer must not enter into a contract with an employee or prospective employee that includes such a void provision. (Bus. & Prof. Code, § 16600.5(c).)

216. An employer that enters into, or attempts to enforce a contract, that is void under Bus. & Prof. Code, § 16600 et seq. commits a civil violation. (Bus. & Prof. Code, § 16600.5(d).)

217. An employee, former employee, or prospective employee may bring a private action for injunctive relief or the recovery of actual damages, or both, to enforce Bus. & Prof. Code, § 16600 et seq. (Bus. & Prof. Code, § 16600.5(e)(1).)

218. In bringing a private action, a prevailing employee, former employee, or prospective employee in an action based on a violation of Bus. & Prof. Code, §

16600 et seq. is entitled to recover reasonable attorney's fees and costs. (Bus. & Prof. Code, § 16600.5(e)(2).)

219. Plaintiff therefore seeks injunctive preliminary and permanent injunctive relief in the form of an order prohibiting FRP, and all persons acting in concert with FRP, from seeking in any way to enforce the unlawful restrictive covenants and nonsolicitation agreement it forced Plaintiff to execute as a condition of employment with FRP.

## SIXTEENTH CAUSE OF ACTION

**Violation of Business & Professions Code § 17200 et seq.**

**(Unfair Competition Law)**

**(By Plaintiff and the California Sales Representative Class and the Restrictive Covenant Class against Defendant FRP)**

220. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein as well as those set forth in the following causes of action.

221. FRP's nonpayment of overtime, meal/rest break premiums, wages, improper delegation of payment obligations, inaccurate wage statements, and retaliation constitute unlawful, unfair, and fraudulent business practices under, *inter alia,* Lab. Code §§ 510, 226.7, 212, 226, 226.7, 1194, and 1194.2, et seq.

222. Because of the limitations of actions on claims brought pursuant to those code sections and the lack of alternative remedies, Plaintiff and the putative classes have no adequate remedy at law for such wage-related claims that arose during the time period between 3 and 4 years prior to the filing of this lawsuit.

223. Similarly, FRP's use of unlawful restrictive covenants constitutes an unlawful, unfair, and fraudulent business practice.

224. Plaintiff seeks restitution of all unpaid overtime, break premiums, and bonuses, disgorgement, and injunctive relief.

## SEVENTEENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 16600

### (By Plaintiff and the Restrictive Covenant Class against Defendant FRP)

225. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

226. At all relevant times, Defendant FRP required Plaintiff and hundreds of Class members — all non-owner employees of more than ten acquired California insurance agencies — to execute written agreements containing non-competition and/or non-solicitation-of-customers clauses as a condition of employment or continued employment.

227. These restrictive covenants restrain Class members from engaging in their lawful profession, trade, or business of insurance sales and brokerage.

228. Business & Professions Code § 16601 does not apply, because Class members are employees and not owners who personally sold or transferred goodwill of a business entity. (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937; *Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170; *Blue Mountain Enterprises, LLC v. Owen* (2022) 74 Cal.App.5th 537.)

229. All such restrictive covenants are therefore void ab initio under § 16600.

230. As a direct result, Plaintiff and the Class have suffered and will continue to suffer economic harm and irreparable injury.

///

///

///

## EIGHTEENTH CAUSE OF ACTION

**Violation of the Cartwright Act – Bus. & Prof. Code § 16720 et seq.**

**(By Plaintiff and the Restrictive Covenant Class against Defendant FRP)**

231. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

232. Defendant FRP engaged in a contract, combination, and conspiracy in restraint of trade by adopting and implementing a uniform corporate policy, executed across more than ten acquisitions in the past four years, requiring hundreds of non-owner California insurance producers to sign identical or substantially identical non-competition and non-solicitation agreements.

233. The purpose and effect of this policy was to suppress competition in the California insurance brokerage labor market, lock up client relationships acquired through FRP's roll-up strategy, and eliminate employee mobility.

234. These restraints are per se unlawful because they are void under § 16600 and serve no legitimate pro-competitive purpose.

235. As a direct and proximate result, Plaintiff and the Class have suffered antitrust injury, including lost income, diminished bargaining power, and reduced earning capacity.

236. Plaintiff and the Class are entitled to treble damages under § 16750(a), injunctive relief, and mandatory attorney's fees and costs.

## NINETEENTH CAUSE OF ACTION

**Intentional Interference with Prospective Economic Advantage**

**(By Plaintiff and the Restrictive Covenant Class against Defendant FRP)**

237. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

238. Plaintiff and Class members had probable future economic relationships with clients they personally developed and with prospective employers in the insurance industry.

239. Defendant knew of these relationships and, through the wrongful act of imposing and threatening to enforce void restrictive covenants, intentionally disrupted them.

240. The disruption was substantially certain to occur given the void nature of the covenants under § 16600.

241. As a result, Plaintiff and the Class suffered economic harm.

**TWENTIETH CAUSE OF ACTION**

**Declaratory Relief – Class-Wide**

**(By Plaintiff and the Restrictive Covenant Class against Defendant FRP)**

242. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

243. An actual controversy exists between the parties: Defendant contends the restrictive covenants are enforceable; Plaintiff and the Class contend they are void under § 16600 and constitute an ongoing Cartwright Act violation.

244. Plaintiff seeks a judicial declaration that all such agreements are void ab initio.

**TWENTY-FIRST CAUSE OF ACTION**

**Violation of Bus. & Prof. Code § 16600.1(b) –**

**Failure to Provide Statutory Notice**

**(By Plaintiff and the Restrictive Covenant Class Against Defendant FRP)**

245. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

246. Business & Professions Code § 16600.1(b) required Defendant, no later than February 14, 2024, to provide written notice to every current and former California employee who was party to a void non-competition or non-solicitation clause that the clause is void.

247. Bus. & Prof. Code, §16600.1(c) declares that any employer who violates Bus. & Prof. Code, §16600.1(b) has committed an act of unfair competition.

248. A contract that is void under Bus. & Prof. Code, § 16600 et seq. is unenforceable regardless of where and when the contract was signed. ( Bus. & Prof. Code, § 16600.5(a).)

249. An employer or former employer must not attempt to enforce a contract that is void under Bus. & Prof. Code, § 16600 et seq. regardless of whether the contract was signed and the employment was maintained outside of California. ( Bus. & Prof. Code, § 16600.5(b).)

250. An employer must not enter into a contract with an employee or prospective employee that includes such a void provision. (Bus. & Prof. Code, § 16600.5(c).)

251. An employer that enters into, or attempts to enforce a contract, that is void under Bus. & Prof. Code, § 16600 et seq. commits a civil violation. (Bus. & Prof. Code, § 16600.5(d).)

252. An employee, former employee, or prospective employee may bring a private action for injunctive relief or the recovery of actual damages, or both, to enforce Bus. & Prof. Code, § 16600 et seq. (Bus. & Prof. Code, § 16600.5(e)(1).)

253. In bringing a private action, a prevailing employee, former employee, or prospective employee in an action based on a violation of Bus. & Prof. Code, § 16600 et seq. is entitled to recover reasonable attorney's fees and costs. (Bus. & Prof. Code, § 16600.5(e)(2).)

254. Defendants here knowingly and willfully failed and refused to provide the statutorily mandated notice to Plaintiff and the Class.

255. As a direct result, Plaintiff and the Restrictive Covenant Class have suffered cognizable legal injuries and are entitled to relief as set forth herein, above.

**TWENTY SECOND CAUSE OF ACTION**

**Accounting**

**(By Plaintiff individually against Defendant FRP)**

256. Plaintiff incorporates by reference the preceding allegations in this Complaint as though fully set forth herein.

257. A dispute exists as to the exact amount of the Earn-Out and Vault bonus owed to Plaintiff. The Earn-Out was to be split among former Gaspar employees per the Owner's agreement with FRP; the Vault bonus was tied to Plaintiff's accounts.

258. FRP possesses records necessary to determine the precise amounts (sales data, allocation formulas, etc.). Plaintiff has no adequate remedy at law to ascertain the exact sum without an accounting.

259. Plaintiff demands a full accounting of all Earn-Out and Vault bonus amounts earned, allocated, and owed to him.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

**On the Individual Claims**

1. Compensatory, special, emotional distress and consequential damages, including but not limited to lost wages, bonuses, and the Earn-Out;
2. Attorney fees and costs per, *inter alia,* Bus. & Prof. Code, § 16600.5, Gov. Code, § 12940, Lab. Code, § 218.5;
3. Punitive damages;
4. Civil penalties under Labor Code § 1102.5;
5. Wage statement penalties (Lab. Code § 226(e));

6. A full accounting and judgment for all sums found due;

7. Restitution and injunctive relief pursuant to, inter alia, Bus. & Prof. Code § 17200;

8. Injunctive relief;

9. Declaratory relief; and,

10. Pre- and Post-Judgment Interest.

**On the Class Claims**

11. Waiting time penalties (Lab. Code § 203), meal/rest premiums (§ 226.7), wage statement penalties (§ 226(e));

12. A declaration that all non-competition and non-solicitation agreements imposed on Class members are void *ab initio* under Bus. & Prof. Code § 16600;

13. Treble damages under the Cartwright Act (§ 16750(a));

14. Attorney fees and costs pursuant to, *inter alia,* Lab. Code §§ 218.5, 226(e), 1194; Code Civ. Proc. § 1021.5, Bus. & Prof. Code, § 16600.5(e)(2) and 16750(a).

15. Unpaid minimum wages, unpaid overtime wages, and liquidated damages, reasonable attorney's fees, and costs, pursuant to 29 U.S.C. § 216(b).

16. Compensatory damages for intentional interference with prospective economic advantage;

17. An injunction prohibiting Defendant, its officers, agents, and all persons in active concert, from enforcing or threatening to enforce any such restrictive covenant against any Class member;

18. An injunction mandating that Defendant immediately send the statutory notice to every affected California employee and former employee of the illegality of its restrictive covenants.

19. Restitution and disgorgement under Bus. & Prof. Code § 17200;

20. Mandatory attorney's fees and costs under the Cartwright Act (§ 16750(a)), Code Civ. Proc. § 1021.5, and Labor Code provisions; and,

21. Pre- and Post-Judgment Interest.

**On all Claims**

22. Such other relief as the Court deems just and proper.

Dated: March 3, 2026

**The Cullen Law Firm, APC**

Paul T. Cullen, Esq.
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: March 3, 2026

**The Cullen Law Firm, APC**

Paul T. Cullen, Esq.
Attorneys for Plaintiff